IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID WHITE, KATHRIN BENDER, DIANE BOZEMAN, ROY CHERRY, GARY GILMORE, and STEVEN MAXWELL, <br><br> Plaintiffs, <br><br> v. <br><br> COVENTRY HEALTH CARE, INC., a Wholly-Owned Subsidiary of Aetna Inc., <br><br> Defendant. | No. 17-cv-01242 <br><br> Judge Andrea R. Wood |

## MEMORANDUM OPINION AND ORDER

Plaintiffs David White, Kathrin Bender, Diane Bozeman, Roy Cherry, Gary Gilmore, and Steven Maxwell were employed as firefighters and paramedics with the Chicago Fire Department ("CFD"). Plaintiffs allege that Defendant Coventry Health Care, Inc. ("Coventry") unjustifiably induced the City of Chicago ("City") to breach a collective bargaining agreement between it and the CFD Union Local No. 2 ("Union"). Before the Court is Coventry's motion to sever or, in the alternative, to bifurcate the claims in this lawsuit. (Dkt. No. 10.) For the reasons detailed below, Coventry's motion is denied.

### BACKGROUND

This case concerns allegations of tortious interference with a contract. As alleged in the Complaint, the City and the Union are parties to a collective bargaining agreement. (Compl. ¶ 2, Dkt. No. 1-1). For the past 30 years, each iteration of the collective bargaining agreement entered into between the City and the Union has contained the following provision: "The [City] further agrees to pay all hospital and medical costs of an employee incurring a duty connected injury, illness or disability." (*Id.* ¶ 3.) Under the collective bargaining agreement, payment of all

hospital and medical costs is dependent upon "a certificate by the chief physician of the department . . . as to the reasonableness of charges made for services rendered." (*Id.* ¶ 14.) The CFD's chief physician is the CFD Medical Director. (*Id.* ¶ 15.) And "[i]n case of an injury which is attributable to duty, after initial emergency medical treatment, any subsequent medical care must have the approval of the [CFD] Medical Director to be reimbursable." (*Id.* ¶ 16.)

On or about November 20, 2008, the City contracted with Coventry to provide claim-review services. (*Id.* ¶¶ 7, 8.) Before Coventry began its work for the City, the CFD Medical Director would simply heed the advice and recommendations of an employee's treating physician. (*Id.* ¶ 12.) After the Coventry started working for the City, however, recommendations from CFD employees' treating physicians would go through Coventry's nurses and associated physicians for review of the "medical necessity" of the prescribed medical care. (*Id.* ¶ 18.) The nurses and associated physicians never actually saw, examined, or spoke to the patient-employee prior to making a recommendation. (*Id.* ¶ 19.)

With respect to the six Plaintiffs, each sustained a duty-related injury as a CFD uniformed employee between June 24, 2008 and April 16, 2009. (*Id.* ¶ 32.) Shortly after each Plaintiff sustained his or her injury, the CFD Medical Director provided each with the name of a Chicago-area physician. (*Id.* ¶ 33.) Each of those treating physicians issued medical care requests ranging from surgical procedures to occupational therapy. (*Id.* ¶¶ 23, 36, 53.) After reviewing the medical care requests, Coventry issued "not medically necessary" determinations. (*Id.* ¶ 23.) In making those determinations, Coventry's nurses and associated physicians utilized review criteria known as Official Disability Guidelines ("ODG"). Coventry's application of the ODG was medically unjustified and caused delay, denial, and discontinuation of delivery of medical care to Plaintiffs and others. (*Id.* ¶ 114.) Indeed, during the 2009 calendar year,

Coventry sent out 173 medical care determination letters, and in 78% of those letters Coventry determined that the requested treatment was "not medically necessary." (*Id.* ¶ 24.) Because of the "not medically necessary" determinations, duty injuries sustained by firefighters and paramedics, the six Plaintiffs included, were left to fester as the injured employees could not receive the medical care recommended by their physicians. (*Id.* ¶ 29.) The lack of timely care caused damages to each Plaintiff. (*Id.* ¶ 30.)

## DISCUSSION

Coventry seeks severance of Plaintiffs' individual claims and bifurcation of the liability and damages phases of their trials. The Court considers each request in turn.

### I. Severance of Claims

Under Federal Rule of Civil Procedure 21, the "misjoinder of parties is not a ground for dismissing an action," although a court may add or drop a party or sever claims. Fed. R. Civ. P. 21. A Court may "sever any claims that are 'discrete and separate' in the interest of judicial economy and to avoid prejudice." *Vermillion v. Levenhagen*, 604 F. App'x 508, 513 (7th Cir. 2015); *see also Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1016 (7th Cir. 2000) ("It is within the district court's broad discretion whether to sever a claim under Rule 21."). Generally, however, parties may be joined in a lawsuit if "they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(1)(A).

In evaluating whether a particular factual scenario creates "a single transaction or occurrence for purposes of [Federal Rule of Civil Procedure 20], a case-by-case approach is generally pursued because no hard and fast rules have been established." *Adkins v. Ill. Bell Tel. Co.*, No. 14-cv-01456, 2015 WL 1508496, at *7 (N.D. Ill. Mar. 24, 2015) (quoting *Bailey v. N. Trust Co.*, 196 F.R.D. 513, 515 (N.D. Ill. 2000)). Courts interpret the term "single transaction or

occurrence" as including "a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Lozada v. City of Chicago*, No. 10-cv-01019, 2010 WL 3487952, at *2 (N.D. Ill. Aug. 30, 2010) (quoting *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974)). A "logical relationship" between a series of separate occurrences may be established by "a variety of factors, including whether the alleged conduct occurred during the same general time period, involved the same people and similar conduct, and implicated a system of decision-making or widely-held policy." *Birdo v. Dave Gomez*, 214 F. Supp. 3d 709, 722 (N.D. Ill. 2016) (quoting *Adkins*, 2015 WL 1508496, at *7). Additionally, a particular factual scenario may constitute a single transaction or occurrence when "separate trials would result in delay, inconvenience and added expense to the parties and the court because of the likelihood of overlapping proof and duplication in testimony." *McDowell v. Morgan Stanley & Co.*, 645 F. Supp. 2d 690, 694 (N.D. Ill. 2009) (internal quotation marks omitted).

Coventry argues here that Plaintiffs' claims arise out of different transactions and occurrences because Plaintiffs: (1) were injured at different times and under different circumstances; (2) suffered different types of injuries; (3) were treated by different physicians at different facilities; and (4) were prescribed different courses of treatment. Coventry further contends that no company-wide practice is identified in the Complaint because the claims were reviewed on an individual basis by different Coventry personnel and based on different criteria.

But despite Coventry's arguments to the contrary, Plaintiffs have adequately alleged a single transaction or occurrence pursuant to Rule 20. All Plaintiffs were injured within the same ten-month time-period and were denied medical treatment by Coventry shortly thereafter. Plaintiffs allege that Coventry unjustifiably denied them medical care in order to save the City

4

money, thereby increasing its own value to the City. According to Plaintiffs, that denial of medical care resulted from Coventry's policies and practices—namely, reliance on the ODG to determine whether recommendations made by orthopedic specialists were medically necessary. Thus, Plaintiffs are not challenging the discretionary decisions of the individual nurses and physicians who reviewed their medical prescriptions; instead, Plaintiffs claim that all Coventry recommendations were flawed (regardless of the physician or nurse involved) because the system employed to make those determinations was medically unjustified. Overall, Plaintiffs have alleged similar conduct occurring during the same general time period. Further, the alleged conduct implicates a common system of decision-making employed by all Coventry nurses and physicians. As such, Plaintiffs have established a logical relationship between their separate medical denials and joinder of their claims is proper.

Coventry alternatively contends that even if joinder is proper under Rule 20, the Court should nonetheless exercise its discretion under Rule 21 to sever Plaintiffs' cases based on both judicial economy and prejudice to Coventry due to jury confusion. According to Coventry, severance will allow Plaintiffs and Coventry to streamline their cases by avoiding unnecessary discovery issues. The Court is not persuaded by this argument. All Plaintiffs allege that their medical claims were denied pursuant to Coventry's company-wide policy. All Plaintiffs claim that the denial of their claims not only violated the collective bargaining agreement but also was based on medically-unjustifiable ODG criteria. If separate trials were held for each Plaintiff, much of the same evidence regarding the common-scheme and Coventry's knowledge of the collective bargaining agreement would need to be repeated at each trial. Thus, judicial economy would be better served by conducting one consolidated trial on these overlapping actions. Although Coventry argues that requiring a jury to hear evidence and make factual determinations

concerning six separate Plaintiffs will cause confusion, the Court is confident that any potential prejudice to Coventry can be avoided through thoughtfully crafted jury instructions. And even if there were some prejudice that could not be addressed through jury instructions, it would be premature to make such a determination.

In sum, Plaintiffs' claims are properly joined and neither judicial economy nor prejudice considerations warrant severance. Coventry's request for such relief is thus denied.

### II. Bifurcation of Proceedings

Also before the Court is Coventry's request to bifurcate the proceedings. Specifically, Coventry asks the Court to bifurcate the individual Plaintiffs' trials and to bifurcate the liability phase from the damages phase. Under Federal Rule of Civil Procedure 42(b):

> For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial.

In bifurcation proceedings, "the burden is on the moving party to show that bifurcation is proper." *Telewizja Polska USA, Inc. v. EchoStar Satellite Corp.*, No. 02-cv-03293, 2005 WL 2405797, at *4 (N.D. Ill. Sept. 28, 2005) (internal quotations and citation omitted).The Seventh Circuit has established the following three-step process for determining when bifurcation is appropriate:

> First, the trial judge must determine whether separate trials would avoid prejudice to a party or promote judicial economy. Only one of these criteria—avoidance of prejudice or judicial economy—need be met before a court can order separation. Next, the court must be satisfied that the decision to bifurcate does not unfairly prejudice the non-moving party. Finally, separate trials must not be granted if doing so would violate the Seventh Amendment. The ultimate decision to bifurcate under Rule 42(b) is at the court's discretion and will be overturned only upon a clear showing of abuse.

*Houseman v. U.S. Aviation Underwriters*, 171 F.3d 1117, 1121 (7th Cir. 1999). Under this framework, "[t]he court must balance considerations of convenience, economy, expedition, and

prejudice, depending on the peculiar facts and circumstances of each case." *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008). That said, bifurcation "remains the exception, not the rule," since "[a] single trial generally tends to lessen the delay, expense, and inconvenience to all concerned." *THK Am., Inc. v. NSK Co.*, 151 F.R.D. 625, 631 (N.D. Ill. 1993).

In following the three-step process set out by the Seventh Circuit, this Court begins by determining whether separate trials will avoid prejudice to Coventry and promote judicial economy. With regard to prejudice, Coventry argues for bifurcation of both the individual Plaintiffs' trials as well as the liability and damages phases. According to Coventry, Plaintiffs' individual claims should be bifurcated to avoid the danger that a jury would group Plaintiffs' injuries together instead of considering them separately. Coventry also contends that bifurcation of the damages phase from the liability phase is necessary to prevent the jury from improperly considering damages when evaluating liability.

At this stage in the proceedings, the Court cannot assess whether separate trials would avoid prejudice. Furthermore, even if there is some prejudice to Coventry, the Court cannot determine at this point whether that prejudice outweighs the potential financial prejudice to Plaintiffs from having to conduct six separate trials involving overlapping issues. *See Del Monte Fresh Produce, N.A., Inc. v. Kinnavy*, No. 07-cv-05902, 2010 WL 1172565, at *20 (N.D. Ill. Mar. 22, 2010) ("[T]he Court cannot at this point determine whether [Defendant's] prejudice outweighs the potential financial prejudice against [Plaintiffs] that might result from conducting two separate trials that may involve some of the same issues."). Nor has Coventry persuaded the Court that the potential prejudice it faces cannot be avoided through thoughtfully crafted jury instructions. *Id.* Moreover, discovery, dispositive motion practice, and settlement negotiations all may curtail the number and scope of the alleged claims that require trial by jury.

With regard to judicial economy, Coventry argues that bifurcating the liability and damages phases of the trial will promote efficiency because litigating liability first could eliminate the need to delve into the complex and time-consuming consideration of damages evidence. In determining whether judicial economy considerations warrant bifurcation, courts in this District generally consider two factors: (1) "the likelihood that a finding of no liability will actually occur: where the movant can make a *prima facie* showing of success, this Court is more likely to grant bifurcation in the interests of judicial economy;" and (2) if "substantial time and effort will be saved by a finding of no liability, the Court is more likely to grant bifurcation." *A.L. Hansen Mfg. Co. v. Bauer Prod., Inc.*, No. 03-cv-3642, 2004 WL 1125911, at *2 (N.D. Ill. May 18, 2004). Coventry argues that evidence on damages will be extensive, will pertain separately to each Plaintiff, and will relate exclusively to the issue of damages. Because untangling the liability issue from the damages issue will involve extensive, complex testimony from the parties' medical experts, Coventry argues, bifurcation will promote judicial economy.

But it is too early in the proceedings for the Court to determine whether Coventry is likely to prevail on a finding of no liability. Additionally, Coventry has not shown that substantial time and effort will be saved by bifurcating the proceedings. Indeed, Plaintiffs' allegations indicate that the parties will necessarily have to delve into the specifics of Plaintiffs' injuries and medical care to show the validity or invalidity of Coventry's review policy. A description of those injuries and the medical care prescribed by Plaintiffs' doctors will also be necessary to prove damages. As such, based on the allegations in the Complaint, it appears as though the liability and damages issues overlap. Consequently, bifurcation would require the parties to re-litigate many of the same issues. While it is possible that the bifurcation analysis may result in a different result closer to trial, at this time, the issues related to liability and

damages appear intertwined, making bifurcation inappropriate. Because bifurcation will neither avoid prejudice nor promote judicial economy, the Court need not consider the other bifurcation factors.

## CONCLUSION

For the foregoing reasons, Coventry's motion to sever or, in the alternative, bifurcate (Dkt. No. 10) is denied as to both requests for relief.

ENTERED:

Dated: March 26, 2018

_____
Andrea R. Wood
United States District Judge